UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND MONITORING OF MOBILE TRACKING AND TRIGGER DEVICES | Case Number: 20 M 107<br><br>Magistrate Judge Sunil R. Harjani<br><br>**UNDER SEAL** |

## APPLICATION

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United

States Attorney for the Northern District of Illinois, hereby applies pursuant to Rule

41 of the Federal Rules of Criminal Procedure and Title 18, United States Code,

Section 3117, for a warrant and order authorizing the installation and monitoring of

an electronic tracking device, as well as the placement of trigger devices, inside the

**Subject Parcel**, described as:

- The international mail parcel delivery by the United States Postal Service bearing tracking number LN193205996CN (the "**Subject Parcel**").

Further in support of this application, the government states as follows:

1.     Attached hereto and made part of this Application is an Affidavit by

Special Agent Daniel Schutz of Homeland Security Investigations. The United States

respectfully submits that the Affidavit establishes probable cause to believe that the

installation and monitoring of a tracking device and placement of a trigger device, as

defined at 18 U.S.C. § 3117(b), on the **Subject Parcel** will lead to evidence of

1

violations of Title 18, United States Code, Sections 472 and 480 ("the **Subject Offenses**").

2.     The United States requests that agents be authorized to install the tracking device within the Northern District of Illinois and to track the movement of the device both within and outside the Northern District of Illinois, *see* Fed. R. Crim. P. 41(b)(4) and 18 U.S.C. § 3117(a), and in both public and private spaces. *See United States v. Jones*, 132 S. Ct. 945 (2012); *United States v. Knotts*, 460 U.S. 276, 284-85 (1983); *United States v. Karo*, 468 U.S. 705, 717-18 (1984).   For investigative purposes, the United States also requests authorization to install trigger devices inside of the **Subject Parcel**—an optical detection device and a filament device inside each parcel. The trigger devices are designed to alert law enforcement personnel when the **Subject Parcel** is opened.

3.     The United States requests that monitoring be authorized for a period of 45 days from the date of issuance of the warrant. *See* Fed. R. Crim. P. 41(e)(2)(C).

4.     The United States requests that this Court order that (i) any installation authorized by the warrant be completed within ten days from the issuance of the warrant, (ii) that such installation be completed during the daytime, and (iii) that the warrant be returned to the judicial officer designated in the warrant. *See* Fed. R. Crim. P. 41(e)(2)(C).

5.     The United States further requests authority for federal law enforcement officers and authorized law enforcement personnel working under their

2

direction to enter onto private property for the limited purpose of installing, maintaining, repairing, or removing the tracking-device, as described above.

6. Rule 41(f)(2)(C) requires that within ten calendar days after the use of the tracking device has ended the officer executing the warrant must serve a copy of the warrant on the person who was tracked or whose property was tracked, except that the judge may delay notice as provided in Rule 41(f)(3). Pursuant to Rule 41(f)(3) and Title 18, United States Code, Section 3103a(b), the United States requests that notification be delayed until March 23, 2020. As set forth in the Affidavit, providing immediate notification of the execution of the warrant may have an adverse result as defined at Title 18, United States Code, Section 2705(a)(2), namely, flight from prosecution, and destruction of or tampering with evidence. The United States also requests that except to the extent set forth above, this warrant prohibit the seizure of any tangible property, any wire or electronic communication, or any stored wire or electronic information. To the extent this warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in section 2510), or, any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

7. The United States further requests that the Court seal this Application, Affidavit, and Warrant until March 23, 2020.

WHEREFORE, the United States requests this Court issue the requested Warrant and Order.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney
Northern District of Illinois

By:     /s/ Michelle Kramer
        Michelle Kramer
        Assistant United States Attorney
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 886-3482

Dated:     February 7, 2020

4

UNITED STATES DISTRICT COURT     )
    )
NORTHERN DISTRICT OF ILLINOIS     )

## **AFFIDAVIT**

I, Daniel Schutz, being duly sworn, state as follows:

1.     I am a Special Agent with Homeland Security Investigations. I have been so employed since approximately April 2019.

2.     As part of my duties as Homeland Security Investigations Special Agent, I investigate criminal violations relating to narcotics trafficking, money laundering, immigration, and other financial offenses. I have participated in the execution of multiple federal search warrants and utilized various electronic surveillance methods.

3.     The statements in this affidavit are based on my personal knowledge, and on information that I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because of the limited purpose of this affidavit, I have not included each and every fact known to me concerning this investigation.

4.     This affidavit is made in support of an application for:

    a.     An application requesting authorization to install an electronic tracking device, an optical detection device, and a filament device on or inside of the international mail parcel shipped by the United States Postal Service parcel bearing tracking number LN193205996CN (the **"Subject Parcel"**) and to monitor the

1

transmission of the tracking device and trigger devices when the **Subject Parcel** is in both public and private areas; and

b.      An application for an anticipatory warrant to search the townhome unit located at 9418 Huber Court, Orland Park, Illinois, 60467, described further in Attachment A (the "**Subject Premises**"), for evidence, instrumentalities, fruits, and contraband described further in Attachment B, concerning possession and importation of counterfeit currency, in violation of Title 18, United States Code, Sections 472 and 480 (the "**Subject Offenses**").

5.      As discussed below, a search of the **Subject Parcel** reflected that it contained approximately $31,200 in counterfeit United States currency. The tracking device is necessary so that the agents may monitor the approximate location of the **Subject Parcel** during suspected criminal activity, including in both public and private areas. The trigger devices are necessary so that the agents may monitor when the **Subject Parcel** is opened, including in both public and private areas. I also seek an anticipatory search warrant to search the **Subject Premises** in the event the **Subject Parcel**, which is addressed to the **Subject Premises**, enters or is received by someone at the **Subject Premises** or is opened at the **Subject Premises** following its controlled delivery by law enforcement as described below.

6.      As further set forth below, there is reason to believe that the **Subject Parcel** has been and will be used in furtherance of the **Subject Offenses**, and that information concerning the location of the **Subject Parcel** will provide evidence of

2

the **Subject Offenses**, including the identification of possible co-conspirators, the locations where counterfeit currency and evidence of the offenses are being stored. Also set forth below are facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, fruits, and contraband of violations of the **Subject Offenses** will be found at the **Subject Premises** upon the controlled delivery of the **Subject Parcel** to the **Subject Premises**.

## I.   FACTS SUPPORTING PROBABLE CAUSE

### A.   Background

7.     As discussed below, on or about January 28, 2020, officials with U.S. Customs and Border Protection ("CBP") seized a United States Postal Service parcel bearing tracking number LN193205996CN (the "**Subject Parcel**"), which was mailed from China. A CBP officer searched the **Subject Parcel** at the O'Hare International Mail Branch (its arrival airport in the United States) and found that it contained approximately $31,200 in counterfeit United States currency. The sender of the **Subject Parcel** was listed as a business in China and the addressee of the **Subject Parcel** was listed as RAMI RAHIM at 9418 Huber Court, Orland Park, Illinois, 60467 (which is the **Subject Premises**).

### B.   The Subject Parcel

8.     According to records kept by CBP, on January 23, 2020, the **Subject Parcel** (an international mail parcel shipped via the United States Postal Service bearing tracking number LN193205996CN) entered the United States from China. According to the shipping label, the **Subject Parcel** was declared as "Magic Tools."

3

The **Subject Parcel** is a light gray envelope measuring approximately 8 inches by 7 inches by 0.5 inches, and weighed approximately 0.267 kilograms.

9.      According to the shipping label affixed to the **Subject Parcel**, the **Subject Parcel** was addressed to "RAMI RAHIM, 9418 Huber Ct Orland Park Illinois 60467 USA" and showed a return address of "Mr zhang GJBU-QHTY 3/F, Second Phase, Qianlong Logistics Park, China South City, Pinghu LONGGANG SHENZHEN GUANGDONG 518111 CHINA." A photograph of the **Subject Parcel** is depicted below:



10.      On January 28, 2020, the **Subject Parcel** was seized by CBP Officers during a routine border examination at the International Mail Branch ("IMB") located at Chicago O'Hare International Airport in Chicago, Illinois. The IMB is one of several arrival sites for international mail shipments to the United States and was the first point of entry into the United States for the **Subject Parcel**. Based on my

4

training and experience, I understand that all packages shipped into the United States from other countries, including the **Subject Parcel**, are subject to inspection.

11.     The **Subject Parcel** was selected for a routine examination by CBP Officers as part of their regular duties. During the routine examination process, a CBP officer opened the **Subject Parcel** and determined that the package contained approximately 312 counterfeit $100 United States bills (the "Counterfeit Currency").

12.     On or about January 30, 2020, the **Subject Parcel** and its contents, including the Counterfeit Currency, were turned over to HSI Agents. HSI Agents then transported the **Subject Parcel** to the HSI O'Hare office for safe storage.

13.     The front side of the Counterfeit Currency resembles the front side of a genuine $100 United States bill and feature the serial number LB45440078L. The back side of the Counterfeit Currency has a yellow circle on the left side of the bill with pink Chinese language characters. Although the circle shape is found on a genuine $100 bill, the yellow color and pink characters are not characteristics featured on a genuine $100 United States bill. A photograph of the back of the Counterfeit Currency recovered is depicted below:



14.     Based upon the knowledge, training and experience of Secret Service personnel with whom I have spoken, counterfeit currency is commonly presented as legal tender to defraud others. Additionally, counterfeit currency that features obvious counterfeit characteristics, such as the Counterfeit Currency found in the **Subject Parcel**, can also be used to defraud others. For instance, this type of counterfeit currency can be used at businesses that have a "no confrontation" policy, which prohibits employees from questioning the legality of the tender presented to them by a customer.

15.     Additionally, I know based on my training and experience that employees at businesses that accept cash do not always inspect both sides of currency, and furthermore, that if a single counterfeit bill is placed in a stack of other genuine bills, it can more easily escape detection.

16.     The sender listed on the **Subject Parcel** is "Mr. zhang, GJBU-QHTY, 3/F, Second Phase, Qianlong Logistics Park, China South City, Pinghu, Longgang, Shenzhen Guangdong 518111, China." Shenzen Qianlong Logistics Limited is a logistics company based on Shenzen, China, that provides freight and warehouse services.

17.     Based on information and a report provided to me by Secret Service Special Agents, in March 2019, an individual was interviewed after passing counterfeit money as legal tender at a sports arena. The counterfeit bill used by this individual featured the serial number LB45440078L, which is the same serial

6

number featured on all of the Counterfeit Currency found in the **Subject Parcel**.[1] During that interview, the individual stated that he obtained the counterfeit money from Wish.com.

18.     Based on my training and experience, and discussions with other HSI and Secret Service personnel, Wish.com is an e-commerce website for various China-based vendors to sell different products to consumers around the world. Orders from Wish.com are placed on the Wish.com website or through a cellular phone application. Wish.com does not have a catalog for orders through regular mail. Orders placed online or through the application are mailed through Wishpost, a proprietary mailing service of Wish.com, or other logistics companies. I reviewed Wish.com through the cellular phone application and observed for sale the following product: "PROPS ONLY-100 Dollar prop reproduction Copy Prop Cash Bills Practice Training Paper for Movie, TV, Videos, Advertising & Show off (100) Pretend Money." The product listing also contained a photograph of counterfeit currency, specifically $100 United States bills with a yellow circle and pink Chinese characters on the back side of the bills. The photograph depicted below a screenshot of the product description and product photograph from the Wish.com application:

---

[1] The serial number LB45440078L is commonly found on counterfeit currency that is confiscated throughout the United States.



19.    A customer of the product posted a photograph of the counterfeit $100 bill as part of a review of the product. The photograph posted by the customer, which is depicted below, shows that the bill features the serial number LB45440078L, which is the same serial number featured on the Counterfeit Currency found in the **Subject Parcel**.

20.    Based on information provided by law enforcement officers from the United States Postal Inspection Service, another package was mailed to RAMI RAHIM at the **Subject Premises** through Wishpost in November 2019.

8

### C.    Background on Rahim

21.    According to records obtained from the Illinois Secretary of State database, RAMI RAHIM has an Illinois driver's license, which contains the same date of birth for RAHIM listed on FBI records.[2]  In addition, this Illinois driver's license lists RAHIM's address as the **Subject Premises**.

22.    Based on a search of an open source analytical database, which, in my experience, analyzes numerous records from various data sources, including financial and governmental institutions, to provide accurate identifying information regarding individuals, RAHIM has resided at the **Subject Premises** as recently as December 3, 2019.

### D.    Training and Experience Regarding Counterfeit Currency

23.    Through training, experience, and discussions with other experienced agents, I know that individuals involved in the possession and importation of counterfeit currency commonly:

a.    maintain documents, records, receipts, ledgers, and notes reflecting the ordering, purchase, sale, or distribution of counterfeit currency;

b.    maintain address books and telephone contact lists of individuals and entities that manufacture, order, purchase, sell, or distribute counterfeit currency;

---

[2] According to Federal Bureau of Investigation records, on or about January 29, 2007, RAHIM was convicted of one count of opening/destruction of United States Mail and sentenced to 24 months' probation.

9

c. conceal in their residences and places of business the proceeds of their illegal activity, including large amounts of United States currency, money orders, financial statements, and other items of value, as well as books and records regarding the acquisition, use, and disposition of such items of value;

d. maintain books, records, receipts, notes, ledgers, money orders, wire transfer or money remittance records, and other records related to the receipt, expenditure and concealment or other disposition of income related to the ordering, purchase, sale, or distribution of counterfeit currency;

e. maintain materials related to counterfeit currency, including blank check stock, printed checks, debit cards, printers and scanners, check printing software, or receipts for the purchase of any items related to these items; and

f. take, or cause to be taken, photographs of themselves, their associates in their illegal activity, property acquired from the purchase and sale of counterfeit currency, and such photographs are often kept in their residences, places of business, and/or cellular phones;

g. use computers, cellular phones, and other electronic devices to maintain records relating to their illegal activity and to communicate with individuals and entities from whom they obtain, order, and purchase counterfeit currency, particularly when obtaining, ordering, and purchasing counterfeit currency from overseas, including China, (as the intended recipient of the counterfeit currency found in the **Subject Parcel** did in this case); and

10

h.      use computers, cellular phones, and other electronic devices to track international parcels containing counterfeit currency through the United States Postal Service website by inputting tracking numbers, such as the tracking number that was given to the **Subject Parcel** in this case.

24.     Based on my training, experience, and discussions with other experienced agents, individuals involved in the possession and importation of counterfeit currency typically use websites and cellular phone applications, like Wish.com, to purchase counterfeit currency from China and other countries. In my experience, and the experience of other HSI agents with whom I have spoken, individuals who purchase counterfeit money from overseas do not purchase counterfeit money through catalogs or paper order forms.

## II.    PLANNED INVESTIGATION

### A.      Tracking Device

25.     Based on the above-stated facts and my training and experience as a Special Agent for HSI and the training and experience of other agents, I believe that it is likely that the **Subject Parcel** was sent to a location where the recipient knows of its contents and anticipates that it will be delivered.

26.     As part of the ongoing HSI investigation, law enforcement agents and officers plan to place the contents of the **Subject Parcel** into a new package that will properly fit the tracking device, affix the original labels to the new packaging, and make the new packaging appear as if it traveled through the mail. Law enforcement officers intend to make a controlled delivery of the **Subject Parcel** to the listed

11

recipient at the **Subject Premises**.

27.     In conjunction with this controlled delivery, I am seeking authorization

to place an electronic tracking device, an optical detection device, and a filament

detection device inside the **Subject Parcel**.  Once placed inside the **Subject Parcel**,

these transmitters would enable law enforcement agents to determine the location of

the **Subject Parcel** via GPS, as well as its location when opened.  The transmitters

emit an electronic signal that can be located by a receiver possessed by the law

enforcement agents.  The transmitters and locating receiver can monitor whether

each package has been opened but cannot transmit or record voice communication or

acquire oral communication. In addition, surveillance will also be conducted at the

**Subject Premises**.

28.     Based on my training and experience, I believe that the monitoring of a

tracking device in the **Subject Parcel** will be relevant to the ongoing criminal

investigation. Knowledge of the location of the **Subject Parcel** will help law

enforcement agents establish physical surveillance on the person who takes custody

of the **Subject Parcel** and, taken in combination with other evidence in the

investigation, may help agents to determine the true intended recipient of the

**Subject Parcel** and the Counterfeit Currency.

29.     Based on my knowledge, training, and experience, as well as the

experience of other law enforcement personnel with whom I have spoken, it is likely

that if a search is undertaken inside the **Subject Premises**, law enforcement will be

12

able to locate and seize the **Subject Parcel** after it has been opened by someone at the **Subject Premises**.

### B.    Nighttime Entry

30.    Based upon my knowledge, training, and experience, as well as the experience of other law enforcement personnel with whom I have spoken, packages that recipients believe contain contraband, such as the **Subject Parcel**, can be opened at any time of day.

31.    In the event that the **Subject Parcel** is successfully delivered to the **Subject Premises** during daytime hours, but law enforcement receives the signal from the optical detection device or filament device that the **Subject Parcel** was opened after daytime hours, I request permission to execute the search warrant as soon as possible, even if outside daytime hours, to prevent the evidence from being moved or destroyed.

32.    Moreover, once the **Subject Parcel** is opened, the recipient may find the GPS device or electronic monitoring devices and may attempt to destroy evidence before law enforcement is able to execute the search. Accordingly, law enforcement agents seek to perform the search at any time in the day or night.

### C.    Specifics Regarding Searches of Electronic Media

33.    Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy

13

information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b. Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused

14

by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

34.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

35.     In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

**D.     Procedures For Searching Electronic Media**

36.     Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

37.     The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

15

      a.      examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

      b.      searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

      c.      surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

      d.      opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

38.    The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

16

## III.    DELAYED NOTIFICATION OF TRACKING DEVICE

39.    In addition, I believe that immediate notification of the government's seizure of information transmitted by the tracking, optical detection, and filament devices may have an adverse result as defined in Title 18, United States Code, Section 2705(a)(2), namely, flight from prosecution and destruction of and tampering with evidence. Specifically, if the government was required to give notice to the recipient of the **Subject Parcel** that the **Subject Parcel** had been tracked, the recipient would alert his or her criminal associates about the government's pending investigation.

40.    The disclosure of the fact and the nature of the government's investigation could also lead to the subjects of the investigation attempting to dispose of any evidence of possession or importation of counterfeit currency that they currently have.

41.    In addition, serving notice to the owner of the **Subject Parcel** could lead to evidence tampering and/or flight from this jurisdiction, and could therefore seriously jeopardize the investigation. For example, if the subjects of the investigation learned that the government was attempting to determine the location of the **Subject Parcel**, they would undoubtedly conclude that the government was investigating them and any criminal associates who are currently unknown. This would result in a change of locations and patterns of criminal activity, the destruction of evidence that currently is in the subjects' possession, non-opening or use of **Subject Parcel,** and possible flight from this jurisdiction.

17

42. Accordingly, I believe there is good cause to seek delay of the notification provisions applicable to any warrant. Moreover, I believe a period of delayed notification of 45 days is appropriate in this case. If the government were required to give notice within ten days of the conclusion of tracking the **Subject Parcel**, such notice would necessarily compromise the ongoing investigation and lead to the adverse results discussed above. Accordingly, I believe there is good cause at this time to seek a 45-day delay of the notification provisions applicable to any warrant.

## IV.  CONCLUSION

43. Based on the above information, I respectfully submit that there is probable cause to believe that the **Subject Offenses** have been committed, and that:

a.   The installation and monitoring of tracking devices and trigger devices placed in the **Subject Parcel** will lead to evidence of the **Subject Offenses**; and

b.   Evidence, instrumentalities, fruits, and contraband relating to the **Subject Offenses** will be found in the **Subject Premises**, upon occurrence of either the following conditions: (i) entry of the **Subject Parcel** into the **Subject Premises**; or (ii) the opening of the **Subject Parcel** after its delivery to the **Subject Premises**.

44.     I therefore respectfully request that this Court issue:

a.     A warrant and order authorizing the installation and monitoring of tracking devices and trigger devices in the **Subject Parcel**; and

b.     An anticipatory search warrant, which may be executed any time or day or night and only if either of the conditions in paragraph 43(b) occur, for the **Subject Premises**, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.


FURTHER AFFIANT SAYETH NOT.


_____
Daniel Schutz
Special Agent
Homeland Security Investigations


Subscribed and sworn
before me this 7th day of February, 2020

_____
Honorable SUNIL R. HARJANI
United States Magistrate Judge


19